## Case No. 5,560.

### GOODYEAR v. BLAKE.[1]

Circuit Court, D. California. June, 1869.

PATENTS—RENEWAL TO ADMINISTRATOR — PLEADING AND PROOF—CERTIFIED COPY OF ASSIGNMENTS—VALIDITY—DEDICATION.

[1. A renewal to a person as administrator is conclusive on the courts, in the trial of the validity of such renewal, that such person was administrator. Woodworth v. Hall, Case No. 18,016, followed.]

[2. By pleading to the merits, defendant admits the capacity of the corporation plaintiff to sue.]

[3. The accidental omission to make technical proof of an uncontroverted fact, such as corporate capacity to sue, may be supplied, in the discretion of the court.]

[4. The commissioner's certificate that the annexed "is a true copy," annexed to various assignments of a patent, attached so as to constitute one document, applies to all of such assignments.]

[5. Copies of assignments of a patent, duly certified, are prima facie evidence of the genuineness of the originals on file.]

[6. The validity of reissued letters patent, issued to the administrator of Nelson Goodyear for an improved process of preparing India rubber and other vulcanizable gums, reaffirmed, as is also the question of what constitutes an infringement.]

[7. The fact that, for a considerable period, dentists had no difficulty in obtaining the Goodyear rubber base for dental purposes, though having no license to use it, and that no suit was instituted in the state for infringement of the patents for many years, does not prove a dedication of the right to use it, where an agency to sell licenses was established in the state, and notice was given on the wrappers of all gum sold that none but licensed purchasers could use it for dental purposes, and that the owners of the patents were vigorously pressing a test case in the courts.]

This was a bill for an injunction and for an account of profits made by defendant by an alleged infringement of a patent. The original patent [No. 8,075] was granted to Nelson Goodyear, for an improvement in the manufacture of India rubber, on the 6th of May, 1851. On the 18th of May, 1858, this patent was surrendered by Henry B. Goodyear, administrator of Nelson Goodyear, and two reissues obtained, Nos. 556 and 557, one for the process and one for the product. These reissues were extended on the 5th May, 1865, for 7 years, from May 6th, 1865. Various technical objections were raised by the defendant. The validity of the reissues and the fact of infringement were also denied.

BY THE COURT. 1. It is objected that there is no proof of the death of Nelson Goodyear, and that the letters of administration are not produced. The same objection was made in the suit, under this patent, in the district court of the United States for the district of West Virginia, and overruled by the court. In Woodworth v. Hall [Case No. 18,016], the court says: "The next objection is that no letters of administration are now produced. But in the Kentucky case (Woodworth v. Wilson, 4 How. [45 U. S.] 712), this objection, among others, was urged, and the court did not sustain it, because the patent being renewed to the plaintiff, as administrator, was proof that he had satisfied the board at the patent office, of the fact of his being administrator, and it was not competent to go behind their decision in respect to it." This authority is decisive of the point.

2. It is objected that no proof is offered of the corporate existence of the Goodyear Dental Vulcanite Company. (1) The objection should have been taken by plea. "It is to be considered that this was a trial upon the merits, and, by pleading to the merits, the defendants, necessarily, admitted the capacity of the plaintiffs to sue." Conrad v. Atlantic Ins. Co., 1 Pet. [26 U. S.] 450. See, too [Smith v. Kernochen] 7 How. [48 U. S.] 198; [Livingston v. Story] 11 Pet. [36 U. S.] 393; [Louisville, C. & C. R. Co. v. Letson] 2 How. [43 U. S.] 497. (2) The certificate of incorporation has been produced since the hearing, and an application made to reopen the case for the admission of the evidence. The application is addressed to the discretion of the court. I can perceive no reason why an accidental omission to make technical proof of an uncontroverted fact should not, in a case like this, be supplied. (3) Even if the corporation be treated as non-existent, the only effect will be to leave the whole title in the other complainants, whose right to sue is established.

3. It is objected that the certificate attached to the copies of the mesne conveyances is insufficient, and that no proof of the execution of the originals is offered. Section 4 of the act of July 4, 1836 [5 Stat. 117], provides "That copies of any records, books, &c., belonging to said office (the patent of-

---

1 [Not previously reported.]

fice), under the signature of the said commissioner, with the said seal affixed, shall be competent evidence in all cases in which the original records, books, &c., could be evidence." Brightly, Dig. 722. The various assignments in this case have been attached together so as to form one document, and to this is annexed a certificate of the acting commissioner of patents, under the seal of his office, that "the annexed is a true copy from the records of this office." It is argued that the use of the singular restricts the application of the certificate to the first agreement contained in the document. I see no reason for such a construction. The commissioner has treated all the papers, when attached together, as constituting one document. If any of the originals of the papers thus bound together is not of record, or is not correctly copied, the certificate is untrue. The certificate imports verity, and is prima facie evidence of the genuineness of the originals, and absolute evidence of the correctness of the copies. The objection that the original assignments were not proved was taken in Parker v. Haworth [Case No. 10,-738], and overruled. Copies duly certified were held to be prima facie evidence of the genuineness of the originals on file in the office. The foregoing are all the technical objections presented at the hearing.

The defendant further insists that the reissues are invalid, that there has been no infringement, and that the rights under the patent have been abandoned and dedicated to the public. The invention patented is for an improved process of preparing India rubber and other vulcanizable gums, whereby a new substance is produced, distinct in character, and used for wholly different purposes from that produced by the invention of Charles Goodyear. The reissues were for the process or method, and for the product or result. The validity of these reissues has been before the courts in numerous cases. I do not feel called upon to enter into a detailed examination of the various objections urged to them. It has repeatedly been held that the reissue patents were for substantially the same invention as that covered by the first patent to Nelson Goodyear; that the original patent was properly surrendered in order to amend the claim that the reissue of two patents, one for the process and the other for the product, was unobjectionable; that the specifications were in all respects sufficient, and that the reissues are not for an invention broader than that claimed, or which, by a fair construction, can be included in the original patent. I have carefully perused the numerous decisions, certified copies of which have been furnished to the court, and I yield to their authority, and agree to their conclusions. The question of infringement is equally well settled by the authority of the numerous courts to which cases under these patents have been submitted.

The invention consists in combining a specified quantity of sulphur, from 25 per cent. to 50 per cent., with India rubber, and by subjecting the compounds to a specified heat, obtaining thereby a new product of great and varied utility. The patents, as has been observed, are for the process, and for the product as obtained by the process. It will be observed that the process consists of two parts,—first, the combination of the sulphur and gum in the requisite proportions; and, secondly, the subjecting of the compound to heat. It is the latter part of the process which imparts to the compound its valuable properties. The gum is combined with the sulphur by persons who devote themselves to that branch of the manufacture. It is, at this stage, plastic and soft, and easily moulded into any form. In this condition it is bought by dentists, and when moulded into the required form it is baked, and the hardness, durability, elasticity, and its other valuable qualities, imparted to it. It is admitted in this case that the defendant has purchased the plastic gum combined with sulphur, as specified in the patent, and converted it, by heating, into the vulcanite or product specified in the patent No. 557. This he claims is no infringement of either patent. But, assuming both patents to be valid, the infringement is clear. He has produced the product patented by the use of the process patented. It is true that he has not himself conducted the whole operation; but he has used the most important part of it, and that which, by producing the new substance, alone gives value to the previous parts of the process. If, in a process, consisting of two distinct parts or operations, not necessarily continuous, one person could conduct the first, and, turning over the half-completed article to another, the latter could perform the second part, and produce a result which is also patented, without liability on the part of either to the owner of both the process and the product, the protection of the latter would be gone. But the point, as before observed, is settled by authorities too numerous to be questioned. In Wait's Case, and in several others, the infringement charged was substantially, if not literally, identical with that charged in the bill before this court, viz.: the making and using of the hard rubber in the manufacture of plates for artificial teeth. In all these cases it was held to be an infringement. See opinions of Leavitt, J., in the United States circuit court for the Southern district of Ohio, in Goodyear v. Berry [Case No. 5,556]; of Nelson, J., in Goodyear v. Wait [Id. 5,587]; of Nelson, J., in Goodyear v. New York Gutta-Percha, etc., Co. [Id. 5,580]; of Jackson, J., in Goodyear v. Hullihen [Id. 5,573].

The remaining ground of defence is the alleged abandonment and dedication to the public of their rights by the owners of the patent. It is not alleged on the part of the defendant that by reason of any dealing

with him by the complainants, or sales by them to him of rubber, they have licensed him to use the invention. In such cases, and in analogous ones under the copyright law, the court will refuse to interfere summarily by injunction, and leave the parties to their action at law. Rundell v. Murray, Jac. 311; Saunders v. Smith, 3 Mylne & C. 721. The defendant claims through the public, and he must maintain his case, if at all, through a dedication. In the able argument of Mr. Blake in Goodyear v. Wait [supra], it was strenuously urged, in opposition to the dictum of Mr. Justice Story in Wyeth v. Stone [Case No. 18,107], that there could be no dedication to the public of a patent right; that a patent right is as much the right of the patentee as the furniture of his house, or the stock on his farm; and that there was no such mode of alienating this right known to the law as the dedication of a patent to the public. The court, however, declined to pass upon the question, being of opinion that upon the proofs no dedication could in point of fact be maintained. The doctrine of dedication has been pronounced an odious doctrine, to be proved only by the most conclusive evidence. The evidence offered in this case is to the effect that no suit has until the present one been instituted in this state. That, for a considerable period, dentists have had no difficulty in obtaining all the rubber base they require, and this without having previously procured a license. But it appears that some eight or nine years ago an agency for the sale of licenses was established in this state, and that they were procured by several dentists. That the rubber was sold in boxes made by the American Hard Rubber Company, and containing a notice that no one, not licensed, could use the gum for dental purposes. That some of the gum was obtained from Roberts in 1860, but the purchaser was, a short time afterwards, informed that the company claimed that he was infringing. That circulars and notices of legal proceedings, contained in dental journals, were seen by most of the dentists, and that it was known, since the renewal of the patent, that the company was pressing its claims by suits, issuing licenses, etc. That from 1861, to 1864 McDonald & Co., druggists, in Sacramento, were agents of the company, and, during that time, sold only to licensed purchasers, but in June, 1864, finding that non-licensed persons had no difficulty in procuring the gum, and having informed the company of this fact, they were told by the latter that the patent was about to expire; that it was doubtful whether a renewal could be obtained; and that, in the meantime, McDonald & Co. might use their discretion with respect to selling to unlicensed purchasers, but that if the patent was renewed vigorous measures would be taken to protect their licenses. No formal proofs were offered in support of the allegations of the bill in respect to the numerous suits commenced to

enforce the rights of the complainants, the injunctions obtained by them, etc., etc. But copies of various opinions (in some cases duly certified by the clerk) of courts, in which these actions have been brought, have been handed to the court, it is presumed, rather as authority on the question raised, than as proofs in the case. In no instance, as appears by these opinions, has the defence of dedication received any countenance from the courts. In the present case the proofs, on the part of the defendant, wholly fail to raise even a presumption that the owners of the patent, for a moment, intended to abandon their valuable right of property to the public. The remoteness of California, and their desire to wait until a final and authoritative decision of all the points involved could be obtained in the sharply contested case of Goodyear v. Waite [supra],—decided in 1867, —may have occasioned some delay in the commencing of suits in this state, but, beyond this circumstance, I find nothing from which it can be inferred that the owners of this patent have abandoned their rights. The complainants are therefore entitled to the relief prayed for.

[For other cases involving these patents, see note to Goodyear v. Mullee, Case No. 5,577.]